**UNITED STATES of America,**
**Appellant,**

v.

**David CHUN et al., Appellees.**

**No. 73-2972.**

United States Court of Appeals,
Ninth Circuit.

Aug. 30, 1974.

---

28. The witness Harden anticipated leniency but received no grant of immunity.

**534**

Gregg H. Young (argued), Honolulu, Hawaii, Robert H. Plaxico, Appellate Section. Criminal Division, U. S. Dept. of Justice, Washington, D. C., for appellant.

Joseph M. Gedan (argued), Honolulu, Hawaii, for appellee.

Before DUNIWAY, CHOY and SNEED, Circuit Judges.

## OPINION

SNEED, Circuit Judge:

This appeal arises from an order to suppress tapes of ·certain intercepted wire communications which the government is attempting to use in prosecuting appellees for their alleged participation in a gambling enterprise prohibited by 18 U.S.C. § 1955. It involves a class of defendants whose interests appear to have been almost completely forgotten by the draftsmen of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520.

## I.

### STATEMENT OF THE CASE

On application of government attorneys, the interception of wire communications from various telephones was authorized by the United States District Court for the District of Hawaii pursuant to the provisions of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–2520. These authorizations extended over a period of some two months until, on December 18, 1972, government surveillance of the telephones was discontinued. In conjunction with the same investigation, agents of the Federal Bureau of Investigation also executed approximately seventy-eight conventional search warrants. Probable cause for the issuance of these warrants had been satisfied on the basis of information disclosed during the course of the above-mentioned interceptions.

On January 11, 1973, the district judge who had authorized the interceptions met with a government attorney to determine the identity of those individuals who should be served with 18 U.S.C. § 2518(8)(d) inventory notice. This subparagraph, upon which the present appeal rests, provides as follows:

(d) Within a reasonable time but not later than ninety days after the filing

of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—

 (1) the fact of the entry of the order or the application;

 (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and

 (3) the fact that during the period wire or oral communications were or were not intercepted.

The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

Two classes of individuals are contemplated by this statute: (1) those who *must* be served with inventory notice by the issuing or denying judge; and (2) those who *may* be served with inventory notice provided the judge, in exercising his discretion, has determined that such service will be in "the interest of justice." Given that the record is unclear regarding whether the order or application named any of the present appellees, for purposes of our analysis they will all be treated as falling within the second of these classes.[1]

Although there is no written record of the January 11, 1973 meeting, both appellant's brief and the order granting the motion to suppress indicate that the district judge fulfilled his § 2518(8)(d) duties on the basis of information which had been supplied to him by the government attorney. The judge was presented with the names of those individuals who had been named in the wire interception approval order, and thus were entitled under the statute to receive an inventory notice. However, none of the present appellees fit within this class.[2] The government attorney also disclosed the names of those individuals upon whom conventional search warrants had been executed; but none of the appellees were members of this group either. Finally, the government attorney indicated to the judge the names of all individuals against whom the government intended to seek indictments. However, as of the date of this meeting the government had determined that the evidence against the appellees was insufficient to warrant their indictment; and, thus, they were also not within this last group. As a result, their names were never revealed to the judge.

Following the above meeting, the judge determined that forty-one persons, none of whom are appellees herein, were to be served with inventory notice; and on January 12, 1973, the judge executed an order to that effect. Shortly after this order had been issued, the government reassessed the existing evidence and decided that appellees should be indicted. The judge, however, was never informed by government attorneys of this change in circumstances. On March 21, 1973, appellees were indicted with thirty-seven other defendants, all of whom had received an inventory notice pursuant to the January 12, 1973

1. Appellee Masutani claims that he was named in the application for the order, and is thus entitled to receive mandatory inventory notice. Given our holding that there has been a violation of § 2518(8)(d), we see no need at this time to distinguish Masutani from the other appellees.

2. It should be noted that the statute also *requires* inventory notice to be given to those individuals named . . . in the application" for the order. This is the subject of appellee Masutani's claim. *See supra*, note 1.

order. Appellees have never received formal § 2518(8)(d) inventory notice.

On June 25, 1973, a motion was made to suppress the intercepted communications because of non-compliance with § 2518(8)(d).[3] In ruling on this motion, the judge first indicated that he would have included appellees in his January 12, 1973 order had he been aware that they might have been subject to indictment. He then reasoned that, because of the government's failure to bring their existence to his attention, he had been precluded from properly exercising the discretion vested in him under the statute. Persuaded that because of the nature of the evidence the mere passage of time had prejudiced appellees' ability to defend against the indictments, he concluded that suppression was required. In so doing, he relied on United States v. Eastman, 465 F.2d 1057 (3rd Cir., 1972). It is from this order that the government appeals.

A careful reading of Title III reveals that Congress did not attempt to develop an inflexible set of rules specifically designed to afford protection to those who, although not named in an application or order, have their conversations overheard as a result of a properly authorized wiretap. Although such individuals are subject "to search," the protection they receive is, for the most part, derived from that which has been provided for those named in the application or order. The potential inadequacy of this derivative protection comes to the fore in the area of inventory notices.

3. Appellee Masutani initially moved for the suppression, and was later joined by several of the appellees on their own motions. The remainder were joined by the court pursuant to an understanding that each defendant would be held to have joined in those motions of the other defendants which were pertinent to him.

4. Although we realize that many constitutional violations were intended to be covered under the Act, *see* United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed. 2d 341 (1974) ; United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), we separate the statutory and the constitutional issues for ease of analysis.

The unnamed, but overheard, are entitled to such notice only to the extent the issuing judge in his discretion determines that the interest of justice so requires.

It is against this statutory background that we must analyze the district court's order. In doing so, we shall utilize two distinct levels of inquiry—one constitutional, the other statutory.[4]

## II.

## SUPPRESSION UNDER THE FOURTH AMENDMENT

 Turning initially to the constitutional level, the issue before us is whether the failure to serve appellees with inventory notice, given the circumstances of this case, constitutes a violation of their Fourth Amendment rights. Should such a violation be found, suppression would be required under the judicially-fashioned exclusionary rule.

In Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967), the Supreme Court enunciated certain constitutional standards which a valid wiretapping statute must contain. Among those standards were notice procedures and procedures for a return on the warrant. 388 U.S. at 60, 87 S.Ct. 1873. *See also* Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, Congress carefully considered the mandate of these cases in drafting the provisions of Title III. *See, e. g.,* 1968 U.S.Code Cong. and Adm.News at 2153.[5]

5. These standards were discussed by the President's Commission on Law Enforcement and Administration of Justice as follows :

Under the Fourth Amendment it has been traditionally thought that all searches must be on notice . . . [but] it is clear that unless [the wiretap] is surreptitious, it is useless.

This objection possesses almost unanswerable logic and substance. Nevertheless, it does not seem to pose an insuperable barrier to a carefully drawn scheme of authorization. First, it is clear that all searches need not be conducted on prior notice. When no one is at the place searched, notice comes to the party only

To compensate partially for the loss of prior notice, which is traditionally available in the use of conventional search warrants, Title III requires a showing of special circumstances before a wiretap may be authorized. 18 U.S.C. § 2518(1)(c) and (3)(c). For the same reason, post-use notice is also required.[6] Thus, those named in the wiretap order or application must be given a proper inventory notice. 18 U.S.C. § 2518(8)(d). Moreover, copies of the Court order and application under which the interception was authorized or approved must be given to "each party" within ten days of a proceeding before the contents of the interception may be used in any trial, hearing, or other proceeding. 18 U.S.C. § 2518(9).[7]

Title III's statutory scheme has consistently passed constitutional scrutiny.

*See, e. g.*, United States v. Whitaker, 474 F.2d 1246 (3rd Cir., 1973); United States v. Cafero, 473 F.2d 489 (3rd Cir., 1973); United States v. Cox, 462 F.2d 1293 (8th Cir., 1972); United States v. Ripka, 349 F.Supp. 539 (E.D.Pa.1972). While not intending to express any doubt about the correctness of these authorities we point out that the unnamed but overheard are also entitled to Fourth Amendment protection. Specifically, we believe that when the government intends to use the contents of an interception or evidence derived therefrom, to obtain an indictment against an unnamed but overheard individual, such individual must be given notice promptly after the decision to obtain an indictment has been made. At a minimum, this notice must include all the information which is contained in a §

---

through the inventory which must be left and filed with the court. Second, the constitution does permit an entry into a home for a lawful governmental purpose without prior notice of authority and purpose where giving such notice of authority and purpose would reasonably result in the destruction of evidence subject to seizure. There is no reason why some sort of inventory procedures applicable to electronic surveillance warrants could not be worked out. Warrant procedures prior to use of electronic equipment and inventory procedures subsequent to its use would help limit the indiscriminate use of the devices. More importantly, they would make possible prior and subsequent judicial review of their use and possible abuse. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Organized Crime, Appendix C at 97 (1967) (hereinafter Task Force Report). *See also* Standards Relating to Electronic Surveillance, American Bar Association Projects on Standards for Criminal Justice, Approved Draft at 92 (1971) (hereinafter ABA Project, Approved Draft).

6. Section 2518(8)(d) was clearly meant to provide this post-use notice. The Senate Report on that subparagraph states: "Yet the intent of the provision is that the principle of post-use notice will be retained." 1968 U.S.Code Cong. and Adm.News at 2194. Such post-use notice functions to provide individuals with the opportunity to exercise their constitutional right to challenge the validity of a wiretap, and, thereby, the admis-

sibility of evidence obtained or derived therefrom. *See* Alderman v. United States, 394 U.S. 165, 183, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939). Section 2518(9) performs a dual function. First, it operates to provide the requisite post-use notice to aggrieved persons in those instances where it is not supplied by subparagraph 2518(8)(d). United States v. Ripka, 349 F.Supp. 539, 541–542 (E.D.Pa.1972). At the same time it also operates to provide additional information to an individual who has received § 2518(8)(d) notice, and who is subsequently indicted, so that he may be in a better position to attack the validity of the initial order.

7. Section 2518(9) provides:
 (9) The contents of any intercepted wire or oral communication or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before the trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.
18 U.S.C. § 2518(9).

**538**

2518(8)(d) inventory notice. In this context, the determination of what constitutes "promptly" should focus on whether the individual has been afforded a reasonable opportunity to prepare an adequate response to the evidence which has been derived from the interception.[8]

We find nothing in Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973), that would deprive an unnamed but overheard defendant of standing to assert this constitutional right. To so do is not the vicarious assertion of the rights of another, it is assertion of the defendant's legitimate expectation of privacy.

It may be that the district judge believed that the appellees' Fourth Amendment rights, as here delineated, had been violated; but the state of the record does not enable us to assert this with confidence. For this reason, as well as for others set forth hereafter, we reverse the order granting the motion to suppress and remand the case to the district court for a determination of this issue. If a constitutional violation is found, then suppression must follow under the judicially-fashioned exclusionary rule. *See* Berger v. New York, *supra*; Katz v. United States, *supra*. However, we also note that even in the absence of a constitutional deficiency, it may still be that the provisions of Title III will independently require such a result.

## III.

## VIOLATION OF 18 U.S.C. § 2518(8)(d)

Under Title III, the proper disposition of a motion to suppress rests on a dual inquiry—whether there has been a violation of Title III; and, if so, whether the particular violation is of the type which requires suppression. Turning to whether there has been a violation of § 2518(8)(d) in the instant case, we begin with the literal language of the statute, which provides in pertinent part that "the issuing or denying judge shall cause to be served, on . . . such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice. . . . " However, in order for the judge to properly exercise this discretion, there must be the requisite interaction of judgment and a knowledge of the pertinent facts. Discretion cannot be exercised in a factual vacuum. The issues here, then, concern the scope of information to which the judge must have access before he can fulfill the discretionary aspects of his § 2518(8)(d) duties and the identity of the party who appropriately should bear the burden of providing that information. The language of the statute itself does nothing to resolve these questions, nor has our research disclosed any cases which deal specifically with this problem.[9]

---

8. If the individual has been called as a witness before the grand jury, he would have a right at that point to attack the surveillance, *see* 18 U.S.C. § 3504(a), and notice would be required within a sufficient time prior to his appearance to allow an opportunity to prepare an adequate response. If, however, the individual has not been called as a witness before the grand jury, his first opportunity to attack the surveillance would be in preparation for trial. *See* In re Grand Jury Subpoena of Fred Vigorito, 499 F.2d 1351 (2d Cir., 1974). Thus notice, as outlined in the text, would not be necessary until a later point in time.

9. One case, however, United States v. Whitaker, 474 F.2d 1246 (3rd Cir., 1973), in

holding that Title III was not constitutionally defective by requiring prompt notice only to those named in the order or application, and not to all persons whose conversations were intercepted, stated:

That section [2518(8)(d)], moreover, gives the judge discretion to cause service of the inventory upon other parties to the communication in cases where the communication has been such that the identity of such other parties is in fact known. But as we pointed out in *Cafero*, *supra*, Congress has directed that in the exercise of that discretion the district court carefully weigh the competing claims to privacy arising of necessity from the interception of spoken communications.

*Id.* at 1247.

The legislative history of Title III is more helpful. As indicated in the Senate Report:

Title III has as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.

1968 U.S.Code Cong. and Adm.News at 2112, 2153 (S.Rep.No.1097), 90th Cong., 2nd Sess. (1968)). Section 2518(8)(d) furthers these purposes in several ways. First, it contributes substantially to one of the Act's underlying policies—the imposition of judicial supervision and control over all aspects of an authorized wiretap.[10] In addition, Congress intended § 2518(8)(d) to further the following interrelated objectives: to reflect the inventory and notice system for conven-

tional search warrants contained in Rule 41, F.R.Crim.P.; to reduce the threat of completely surreptitious surveillance; to afford "aggrieved persons" the opportunity to pursue an appropriate remedy; to deter abusive use of wiretaps; and to win the confidence of the community that the techniques are fairly employed.[11]

■ However, as originally proposed § 2518(8)(d) would have required only that the inventory notice be served on the persons named in the wiretap order or application. It was not until the incorporation of an amendment proposed by Senator Hart, which provided for discretionary service of inventory notice to persons other than those named in the order or application, that the unnamed but overheard were accorded some protection under the Act.[12] In addition to

10. This policy was expressly stated by Congress as follows:

[T]he interception of wire or oral communications . . . should be allowed only when authorized by a court of competent jurisdiction and should remain under the control and supervision of the authorizing court.

Pub.L.No.90–351, § 801(d), 82 Stat. 211–212 (1968). *See also* 1968 U.S.Code Cong. and Adm.News at 2177; Berger v. New York, *supra*, 388 U.S. at 54 and 60, 87 S.Ct. 1873; Katz v. United States, *supra*, 389 U.S. at 356, 88 S.Ct. 507.

11. The Senate's report on § 2518(8)(d) reveals these objectives and states:

Subparagraph (d) places on the judge the duty of causing an inventory to be served by the law enforcement agency on the person named in an order authorizing or approving an interception. This reflects existing search warrant practice. *See* Federal Rules of Criminal Procedures, 41(c); Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The inventory must be filed within a reasonable period of time, but not later than 90 days after the interception is terminated. It must include notice of an entry of the order, the date of its entry, the period of authorized or approved interception, and whether or not wire or oral communications were intercepted. On an ex parte showing of good cause, the serving of the inventory may be, not dispensed with, but

postponed. For example, where interception is discontinued at one location, when the subject moves, but is reestablished at the subjects [sic] new location, or the investigation itself is still in progress, even though interception is terminated at any one place, the inventory due at the first location could be postponed until the investigation is complete. In other situations, where the interception relates, for example, to a matter involving or touching on the national security interest, it might be expected that the period of postponement could be extended almost indefinitely. Yet the intent of the provision is that the principle of postuse notice will be retained. This provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject. He can then seek appropriate civil redress for example, under section 2520, discussed below, if he feels that his privacy has been unlawfully invaded.

*See* 1968 U.S.Code Cong. and Adm.News at 2194. *See also* Task Force Report at 97 and 104; ABA Project, Approved Draft at 92 and 161–162.

12. The provisions of S. 917, 90th Cong., 1st Sess. (1967), were eventually enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968. S.Rep.No.1057 on S. 917 was issued on April 29, 1968. Amendment No. 754, which provided for discretionary service for inventory notice to those not named in the wiretap order or ap-

being in harmony with the more general aims of the statutory scheme, this amendment was designed to require the court to balance, in each instance, the rights of the various parties involved in a wiretap surveillance.[13]

■ To discharge this obligation the judicial officer must have, at a minimum, knowledge of the particular categories into which fall all the individuals whose conversations have been intercepted. Thus, while precise identification of each party to an intercepted communication is not required, a description of the general class, or classes, which they comprise is essential to enable the judge to determine whether additional information is necessary for a proper evaluation of the interests of the various parties. Furthermore, although the judicial officer has the duty to cause the filing of the inventory,[14] it is abundantly clear that the prosecution has greater access to and familiarity with the intercepted communications. Therefore we feel justified in imposing upon the latter the duty to classify all those whose conversations have been intercepted, and to transmit this information to the judge. Should the judge desire more information regarding these classes in order to

exercise his § 2518(8)(d) discretion, we also hold that the government is required to furnish such information as is available to it. It is our belief that this allocation of responsibilities between the executive and judicial branches of government will best serve the dual purposes underlying Title III.

■ The failure of the government to provide the judge with even a general description of the appellees in the present case was thus sufficient to constitute a violation of § 2518(8)(d). To repeat, appellees were individuals whose conversations had been intercepted; they were under serious investigation for possible indictment for illegal gambling activities and later actually were indicted; the judge issuing the wiretap order would have required them to be served with inventory notice pursuant to § 2518(8)(d) had he known of their existence and capacities; and his lack of knowledge came about because of the government's failure to disclose that information to him. The inescapable result is that the judge was denied the opportunity to exercise his discretion with respect to appellees.[15] This contravenes both the spirit and the letter of § 2518(8)(d).

plication, was not proposed until May 9, 1968. 114 Cong.Rec. 12508 (1968). It was discussed and approved by the Senate on May 22, 1968. 114 Cong.Rec. 14485–86 (1968). On May 23, 1968, H.R. 5037 was passed by the Senate in lieu of S. 917 as amended 114 Cong.Rec. 14798 (1968).

13. For example, if A, under an order, talks with B, notice is only *required* to be served on A. However B's rights may also have been violated, and without notice he lacks redress. Therefore, notice to B may serve the interest of justice. On the other hand, if A is a businessman and B is a customer, notice to B of a wiretap directed at A may severely damage A's business reputation. In this case, the interests of A's privacy may not justify notice to B. *See* The Association of the Bar of the City of New York, Committee on Federal Legislation, Committee on Civil Rights, Proposed Legislation on Wiretapping and Eavesdropping after Berger v. New York and Katz v. United States, 114

Cong.Rec. 14470, 14476 (1968). *See also* 114 Cong.Rec. at 12508 (explanation of Amendment No. 754 by Senator Hart), 14485–86 (comments by Senator Hart urging approval of Amendment No. 754), and 1470 (Department of Justice Comment urging approval of Amendment No. 754).

14. *See* ABA Project, Tentative Draft at 161. *See also* 1968 U.S.Code Cong. and Adm. News at 2194; United States v. Escandor, 319 F.Supp. 295, 299 (S.D.Fla.1970).

15. Appellant points out that the government attorney may have asked the judge if he needed additional information in determining the individuals to receive § 2518(8)(d) notice. Although this possibility remains unverified even if it were true our holding would not change under the circumstances of this case. The information which was supplied would still have been insufficient to enable the judge to determine whether such additional information was necessary.

## IV.

## SUPPRESSION OF EVIDENCE UNDER TITLE III

There remains the issue of whether the Act requires that the evidence against appellees be suppressed. Resolution of this issue is largely governed by two Supreme Court decisions which were rendered following the district judge's ruling in the instant case. In United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), the Supreme Court held that suppression was required under 18 U.S.C. § 2518(10)(a)(i) where a wiretap application had been authorized by the Attorney General's Executive Assistant, rather than by either the Attorney General or any specially designated Assistant Attorney General as expressly required by 18 U.S.C. § 2516(1). However, in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974), the Court also held that misidentifying the Assistant Attorney General as the official authorizing the wiretap, when the Attorney General himself had actually given the approval, was not the kind of statutory violation which requires suppression under the Act.[16]

As analyzed by the Court:

> The issue does not turn on the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights, but upon the provisions of Title III . . . .
>
> Section 2515 provides that no part of the contents of any wire or oral communication, and no evidence derived therefrom, may be received at certain proceedings, including trials, "if the disclosure of that information would be in violation of this chapter."

What disclosures are forbidden, and are subject to motions to suppress, is in turn governed by § 2518(10)(a), which provides for suppression of evidence on the following grounds:

> "(i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face;
>
> (iii) the interception was not made in conformity with the order of authorization or approval."[17]

United States v. Giordano, *supra*, 416 U.S. at 524, 94 S.Ct. at 1831.

■ In these two cases the Court refused to limit the "unlawfully intercepted" language of § 2518(10)(a)(i) to constitutional violations. *Giordano, supra* at 524–528, 94 S.Ct. 1820. However, the Court in Chavez makes clear that *Giordano* "did not go so far as to suggest that every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful'." *Chavez, supra*, 416 U.S. at 574, 94 S.Ct. at 1856. In order to require suppression, the particular violation must fall within the scope of § 2518(10)(a)(i), which has been defined to encompass the

> . . . failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

*Giordano, supra*, 416 U.S. at 527, 94 S.Ct. at 1832. Thus, the precise issue before us at this juncture in our analysis is whether the violation of § 2518(8)(d)

---

16. Each application for a court order authorizing the interception of a wire or oral communication, 18 U.S.C. § 2518(1)(a), and each interception order, 18 U.S.C. § 2518(4)(d), must identify the officer authorizing the application.

17. Since we have already dealt with the constitutional basis for suppression, *see supra*

at 536–538, the suppression issue before us at this point is confined to the provisions of Title III and does not turn on the exclusionary rule. In analyzing those provisions, we find that § 2518(10)(a)(ii) and (iii) are inapplicable to this case.

here involved falls within the bounds of the above-quoted language.[18]

In resolving this issue, *Chavez* and *Giordano* suggest that there are several important factors which should be considered. As an initial matter, it must be determined whether the particular procedure is a central or functional safeguard in Title III's scheme to prevent abuses. *Chavez, supra,* 416 U.S. at 578, 94 S.Ct. 1849; *Giordano, supra,* 416 U.S. at 516, 94 S.Ct. 1820. If this test has been met, it must also be determined whether the purpose which the particular procedure was designed to accomplish has been satisfied in spite of the error. *Chavez, supra,* 416 U.S. at 573–574, 94 S.Ct. 1849; *Giordano, supra,* 416 U.S. at 524–528, 94 S.Ct. 1820. While in most situations it would not be necessary to reach beyond the above-mentioned factors, it may be that in some instances they will not be completely determinative. In such cases, *Chavez* implicitly suggests a third factor which may have a bearing on the issue—i. e.

whether the statutory requirement was deliberately ignored; and, if so, whether there was any tactical advantage to be gained thereby.

■ As we analyze § 2518(8)(d), the inventory notice provision is a central or at least a functional safeguard in the statutory scheme.[19] Therefore, a violation thereof *may* require suppression under *Giordano.* However, the record is unclear as to whether the underlying statutory purpose behind the § 2518(8)(d) formal notice provisions has been satisfied in spite of appellees' failure to receive such formal notice. In addition, the district judge found that the source of the violation was an "inattention to detail on the part of the government or of the judge or both," which distinguishes this case from the deliberate flouting of a provision of Title III that occurred in United States v. Eastman, 465 F.2d 1057 (3rd Cir., 1972), aff'g 326 F.Supp. 1038 (M.D.Pa.1971).[20] Finally, the facts do not unequivocally indicate a deliberate attempt by the government to gain any tactical advantage.

18. We realize that the language "unlawfully intercepted" must be stretched to include failures of conditions subsequent to a valid authorization and execution. However, we believe this stretching is within permissible bounds and is in keeping with the spirit of the provision given the purpose of the evidentiary sanction to "compel compliance with the other prohibitions of the chapter." 1968 U.S.Code Cong. and Adm.News at 2184.

19. This belief finds support in the legislative history. Thus, for example, it has been stated that:

This provision alone should insure the community that the techniques are reasonably employed.

1968 U.S.Code Cong. and Adm.News at 2194.

[T]he deterrent and publicity effects of this provision could be expected to go a long way toward guaranteeing that the equipment would be carefully used.

Task Force Report at 104.

The provision constitutes, in short, a key element in the system of checks and balances envisioned by the standards to prevent abuses and win the confidence of the community that the techniques are fairly employed.

ABA Project, Approved Draft at 162.

20. In *Eastman,* the judge who granted the wiretap authorization had expressly waived

service of the inventories at the time he approved the wiretap applications. Faced with a clear and deliberate failure to comply with the statutory provisions, the court held that:

The touchstone of our decision on this aspect of the case at bar is not one in which an inventory was delayed but rather is one in which specific provisions of Title III were deliberately and advertently not followed. In other words the failure to file the notice of inventory is no mere ministerial act. It resulted from a judicial act which on its face deliberately flouted and denigrated the provisions of Title III designated for the protection of the public. This we cannot countenance. The communications were unlawfully intercepted. Therefore, the provisions of § 2518(10)(a)(i) apply and the motion to suppress must be granted.

465 F.2d at 1062. Absent such showings of a deliberate disregard of the provisions of Title III, it is our view that the district court's reliance on *Eastman* in the present case was misplaced. *See* United States v. Cafero, 473 F.2d 489 (3rd Cir., 1973); United States v. Wolk, 466 F.2d 1143 (8th Cir., 1972); United States v. Ripka, *supra;* United States v. LaGorga, 336 F.Supp. 190 (W.D.Pa.1971).

While we might be tempted to affirm the district judge's suppression of the evidence, we believe it more appropriate from the standpoint of sound judicial administration to reverse and remand so that there may be a reconsideration in the light of *Chavez, Giordano* and this opinion. In this manner, the parties and the district judge will be given an opportunity to focus upon both the constitutional and statutory grounds for suppression. At the same time, such a disposition will spare us the discomfiture of attempting to apply new law to a record which was developed before that law had been fashioned.

Reversed and remanded.