UNITED STATES of America,
Plaintiff,

v.

David CHUN et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

Michael K MASUTANI and Henry
Y. S. Sur, Defendants.

UNITED STATES of America,
Plaintiff,

v.

Gerald J. PARK et al., Defendants.
Cr. Nos. 73-13,206 to 73-13,208.

United States District Court,
D. Hawaii.
Dec. 23, 1974.

Harold M. Fong, U.S. Atty., Stephen H. Scott, Jack C. O'Donnell, Sp. Attys., U.S. Dept. of Justice, Honolulu, Hawaii, for plaintiff.

Matthew S. K. Pyun, Jr., Honolulu, Hawaii, for defendants, David Chun and Henry Y. S. Sur.

Herbert K. Shimabukuro, Nishimura, Lee & Shimabukuro, Honolulu, Hawaii, for defendants, Richard S. Matsuoka and Michael K. Masutani.

Ernest A. Ito, Sidney I. Hashimoto, Chee, Hashimoto, Lee & Oshiro, Honolulu, Hawaii, for defendant, Herbert Yamane.

David L. Fong, Gould & McKenzie, Stephen M. Okano, David H. White, Okano, Noguchi & Wong, Honolulu, Hawaii, for defendants, Allen P. Perkins, Tsuneo Inouye and Harry K. Tomimatsu.

Gregg Young, Honolulu, Hawaii, for defendant, Walter Kubota.

## MEMORANDUM AND ORDER ON REMAND

SAMUEL P. KING, District Judge.

On remand,[1] a hearing was held to develop the facts surrounding the failure to give the appellees inventory notice. In addition, the court solicited evidence as to any claim of prejudice or improper prosecutorial activity. Based on this further evidence, together with the evidence previously adduced, and the guidelines set out by the appellate court, this court addresses itself to the constitutional and statutory aspects of the motions to suppress.[2]

### THE CONSTITUTIONAL ISSUE

The appellate court affirmed the proposition that the unnamed but overheard

[1.] United States of America v. David Chun, et al., 503 F.2d 533 (9th Cir., August 30, 1974), reversed the district court's order of September 5, 1973, granting certain defendants' motion to suppress wiretap evidence for failure to give the inventory notice required by 18 U.S.C. § 2518(8)(d).

[2.] The appellate court indicated several areas for further elucidation.

It may be that the district judge believed that the appellees' Fourth Amendment rights . . . had been violated; but the state of the record does not enable us to assert this with confidence. . . . we . . . remand the case to the district court for a determination of this issue. *Chun*, at 538.

. . . the record is unclear as to whether the underlying statutory purpose behind the § 2518(8)(d) formal notice provisions has been satisfied in spite of appellees' failure to receive such formal notice. . . . Finally, the facts do not unequivocally indicate a deliberate attempt by the government to gain any tactical advantage. *Chun*, at 542.

. . . we believe it . . . appropriate from the standpoint of sound judicial administration to reverse and remand so that there may be a reconsideration in the light of *Chavez*, *Giordano* and this opinion. In this manner, the parties and the district judge will be given an opportunity to focus upon both the constitutional and statutory grounds for suppression. *Chun*, at 543.

subject of a Title III wiretap has a Fourth Amendment constitutional right of privacy, the violation of which could lead to suppression of wiretap evidence attempted to be used against him. Such a determination would rely upon traditional Fourth Amendment standards, requiring notice including at a minimum all the information contained in a subparagraph 2518(8)(d) inventory notice given promptly[3] after the decision to obtain an indictment has been made.[4] What constitutes "promptly" should focus on whether the individual has been afforded a reasonable opportunity to prepare an adequate response to the evidence derived from the interception.[5]

I find from the evidence that, although formal subparagraph 2518(8)(d) inventory notice was not given to these unnamed-overheard defendants, they did in fact have actual notice of the wiretap and access to the conversations in which they were identified as participants on or about March 21, 1973, the date upon which they were indicted, or at the latest March 29, 1973, the date the discovery and pretrial order was filed and the Title III applications were turned over to the clerk of the court for inspection by all defendants. I further find that they had actual notice from about January 12, 1973, when the subparagraph 2518(8)(d) notices were sent out, that the persons with whom they may have had telephone conversations had been the subjects of wiretaps.[6]

Defendants in 73–13,206 had been overheard in wiretaps which terminated November 15, 1972. Defendants in 73–13,207 and 73–13,208 had been overheard in wiretaps which terminated December 18, 1972. Thus the non-inventoried defendants in 73–13,206 were eventually fully notified in fact if not by formal inventory notice some 126 days after the wiretap ended, and the non-inventoried defendants in 73–13,207 and 73–13,208 some 93 days after the wiretap ended.

The decision to indict the unnamed-overheard defendants was reached toward the end of February and the beginning of March 1973, according to the staff attorney who was in charge of this aspect of the government's drive against organized gambling in Hawaii. In some cases the defendants had not been sufficiently identified, in others their involvment had not been sufficiently evaluated, in others the state of the evidence had not been considered adequate, prior to this time.

There was one exception. The failure to inventory defendant Perkins was an oversight. He had been tapped for indictment in the earlier stages of the investigation and was supposed to have been noticed. Failure to list his name on the inventory was not the result of any deliberately improper prosecutorial behavior nor for any sinister purpose.

Defendant Matsuoka testified that he first knew on March 24, 1973, that he had been indicted; that earlier that month he had routinely destroyed a 1972 desk-type notebook in which he kept track of his bets and which entries would establish that he was a bettor for himself only and not a runner; that

---

3. . . . we believe that when the government intends to use the contents of an interception or evidence derived therefrom, to obtain an indictment against an unnamed but overheard individual, such individual must be given notice promptly after the decision to obtain an indictment [is] made. At a minimum, this notice must include all the information which is contained in a § 2518(8)(d) inventory notice. *Chun,* at 537.

4. While the appellate court speaks in terms of notice after the decision to obtain an in-

dictment has been made, no doubt the passage of time prior to such a decision may also impinge on the determination of what is adequate notice.

5. *Chun,* at 538.

6. The execution of about 70 search warrants in December 1972 received wide publicity. At that time the newspaper stories asserted as fact the law enforcement agencies involved had obtained substantial information concerning the gambling activities which were the occasion for the searches from Title III wiretaps.

he knew before destroying these records that the person with whom he had placed his bets had been the subject of a wiretap.

Defendant Kubota testified that he had a witness to the fact that he was only a bettor for himself and not a runner; that this witness had died on April 30, 1974; that he had not heard of the wiretaps until discussing his case with his counsel after indictment.

Defendant Masutani on June 25, 1973, filed an affidavit to support his claim of prejudice. The government objected to the court considering this affidavit as evidence for the purpose of this remanded hearing. That objection is overruled and the affidavit is considered. In that affidavit defendant Masutani avers that he and others with or for whom he is alleged to have placed bets had records which had been destroyed prior to March 21, 1973, but which would have been retained had he been noticed in January 1973, and that the loss of these records substantially prejudices his defense.

All other defendants assert prejudice and prosecutorial tactical advantage by the mere passage of time.

■ On the evidence before me, I have no difficulty in finding that there is insufficient evidence to sustain any of the claims of prejudice. Defendants Masutani, Sur, Park,[7] Inouye, and Tomimatsu, if named wiretappees, would not have had to be noticed under Title III until March 18, 1973, three days before the indictments were returned. Defendants Chun, Kubota, Matsuoka, Perkins and Yamane similarly would have been notified by February 13, 1973, under Title III procedures. The events that took place between the ends of the wiretaps and actual notice to the defendants on or about March 29, 1973, have not been shown to be such as to give rise to any inference of prejudice when considering Fourth Amendment protections.

I conclude that the failure to serve these defendants with inventory notice, given the circumstances of these cases, does not constitute a violation of their Fourth Amendment rights.

## THE STATUTORY ISSUE

The appellate court affirmed the proposition that the unnamed but overheard subjects of a Title III wiretap, at least in general terms, must be made known to the judicial officer exercising the discretionary authority to require or not to require inventory notice, and that a failure by the government to provide that information is a violation of subparagraph 2518(8)(d).[8] The question then remains as to whether such a violation relates to a requirement that plays such a central role in the statutory scheme that suppression must follow, as in United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974), or to a procedural direction that does not affect the lawfulness of the interception, as in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974).

As I read the appellate court's opinion it holds that the inventory notice provision of subparagraph 2518(8)(d) is a central or at least a functional safeguard in the statutory scheme of Title III.[9] Without a notice provision, Title III would be unconstitutional, at least as it applies to persons named in the order authorizing interception.[10] As to such persons, notice is required not later than

---

7. The indictment as to defendant Park has been dismissed on motion of the government.

8. *Chun*, 503 F.2d at 540–541. As pointed out in the appellate opinion, had the judge known that there were unnamed but overheard individuals whom the government might indict, he would have required that they be served with inventory notice pursuant to subparagraph 2518(8)(d).

9. *Chun*, 503 F.2d 542: "As we analyze § 2518(8)(d), the inventory notice provision is a central or at least a functional safeguard in the statutory scheme."

10. Berger v. New York, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967).

90 days after the denial or termination of the wiretap. *See*, United States v. Eastman, 326 F.Supp. 1038 (M.D.Pa. 1971), aff'd, 465 F.2d 1057 (3d Cir. 1972). The statute specifies what shall be in the notice, calls the collected information an inventory (by which I take it is meant a written document), and requires the inventory to be served. One can think of many forms of papers and manners of service which will meet these requirements.

Here, the defendants eventually received the information set out in subparagraph 2518(8)(d). The actual orders authorizing the wiretaps, tapes and transcripts of the actual conversations intercepted, and all supporting documents were made available to all defendants, a disclosure that was formalized by court orders.[11] But as to all defendants, this disclosure took place *after* the expiration of 90 days (no extension having been requested or granted) from the termination of the last wiretap.

The record does not support a finding that any defendant had actual notice of the information required to be set out in the inventory notice of subparagraph 2518(8)(d) prior to the expiration of the 90-day period. This distinguishes this situation from that in United States v. Iannelli, 339 F.Supp. 171 (W.D.Pa. 1972), aff'd, 477 F.2d 999 (3d Cir. 1973).[12]

Therefore, if defendants had been named in the orders or applications under Title III, their failure to receive the information required by the inventory notice of subparagraph 2518(8)(d) within the required period of 90 days would lead to suppression of the wiretap evidence.[13]

All defendants, however, were in the category of unnamed but overheard defendants. As to them, the statute purports to authorize the judge to exercise his discretion, in the interest of justice, to determine that they shall not receive the same inventory notice as named defendants.[14] However, I conclude that a conscious decision not to notice an unnamed but overheard individual who was known to be tapped for indictment could not withstand constitutional scrutiny. If, as held on appeal herein, the unnamed but overheard defendant has a Fourth Amendment right to privacy of the same dimensions as that of a named defendant,[15] post-use

---

11. Transcripts of all wiretaps were made available to all defendants. All sealed documents relating to the wiretaps were unsealed and made available to all defendants. Both events took place on March 29, 1973.

12. In the district court, the judge held that unnamed but overheard defendants need not be noticed pursuant to 18 U.S.C. § 2518(8)(d). He noted that: "In any event it seems likely that Bruno and the others became aware of the intercept in this case when their acquaintances were served." On appeal, the appellate court stated as fact that the appellants raising this issue "eventually received actual notice well in advance of the hearing on a motion to suppress. There was no prejudicial error here."

13. United States v. Eastman, 465 F.2d 1057 (3d Cir. 1972), aff'g 326 F.Supp. 1038 (M.D.Pa.1971) (semble). Failure to order inventory notice to be served on named defendants would be just as deliberate a flouting of a provision of title III as a prior waiver of the requirement. If this were

coupled with actual failure to serve an inventory notice within the time limits of subparagraph 2518(8)(d), the violation would be obvious and lead to suppression. On the other hand, if inventory notice had in fact been served on a defendant within the applicable time limit without a court order, or notwithstanding a court order waiving the requirement, the violation could be considered to be merely technical. This is the kind of distinction I read into *Giordano* and *Chavez*.

14. The last sentence of subparagraph 2518(8)(d) provides: "On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed." There seems to be no reason why the judge could not for good cause postpone the serving of the inventory as to some individuals or classes of individuals and not as to others. No attempt was made to do that in this case.

15. *Chun*, 503 F.2d at 537.

notice of a wiretap is required,[16] and a failure to give such notice would render the overheard communication unlawfully intercepted within the meaning of section 2518(10)(a).[17] Inasmuch as the judicial officer in the exercise of his discretion could not constitutionally exclude unnamed but overheard prospective defendants from the inventory notice required by subparagraph 2518(8)(d), such notice must be given "not later than ninety days" from the denial or termination of the wiretap.[18]

Perhaps a distinction in notice requirements between named defendants and unnamed but overheard defendants as to time of notice could meet constitutional requirements. Thus, the statute might have been drafted with definite notice time limits for named defendants and elastic notice time limits based on traditional Fourth Amendment standards for unnamed but overheard defendants. But subparagraph 2518(8)(d) makes no such distinction.[19] All persons who are to be served an inventory notice are to be served within a reasonable time but not later than 90 days after denial or termination of a Title III wiretap.[20]

From this view of the statutory scheme and applicable law, it follows that the reason why the judicial officer did not order inventory notice to be given to these unnamed but overheard defendants is immaterial. Assuming, on the other hand, that the judicial officer could, in the exercise of his discretion in the interest of justice, exclude unnamed but overheard prospective defendants from the inventory notice requirement of subparagraph 2518(8)(d), that is not the factual situation in this case.

■ The facts that these unnamed individuals had been overheard and that they were prospective defendants was not brought to the attention of the judge at the time of the inventory notice in January 1973 or at any subsequent time prior to indictment.[21] The appellate court held that this was a violation of both the spirit and the letter of subparagraph 2518(8)(d).[22] This violation relates to a matter that is a central or at least a functional safeguard in the statutory scheme.[23] Suppression must follow when it is shown that a statutory requirement which was intended to play a central role in the statutory scheme has been ignored.[24]

## CONCLUSION

The motions of defendants Chun, Kubota, Matsuoka, Perkins, Yamane, Masutani, Sur, Inouye, and Tomimatsu, to suppress the intercepted communications obtained as a result of the Title III wiretaps herein are granted.

---

16. *Chun*, at 537, and n. 6.

17. *See, Giordano, supra,* at 1831–1833.

18. The subparagraph provides that the time of service may be postponed on an "ex parte showing of good cause". That was not attempted in this case.

19. *See,* n. 14.

20. *See,* n. 14. That 90 days is itself a reasonable time follows from the decisions finding that Title III's statutory scheme passes constitutional scrutiny. Undoubtedly the statute could have provided for a longer period of time. *See,* United States v. Cafero, 473 F.2d 489, 498–500 (3d Cir. 1973).

21. *See,* n. 8.

22. *Chun,* 503 F.2d at 540: "This contravenes both the spirit and the letter of § 2518(8)(d)."

23. *See,* n. 9.

24. *See, Giordano, supra,* 94 S.Ct. at 1833. To permit the time limits of subparagraph 2518(8)(d) to be surpassed without suppression would have the effect of deleting the phrase "but not later than ninety days" from the statute.