**UNITED STATES of America**

v.

**Melvin JOHNSON, Sr., Appellant.**

**UNITED STATES of America**

v.

**Odessa Marie MADRE, Appellant.**

**UNITED STATES of America**

v.

**John S. MATTHEWS, Appellant.**

**UNITED STATES of America**

v.

**Clyde N. JONES, Appellant.**

**UNITED STATES of America**

v.

**George BYERS, Appellant.**

**Nos. 75–1523 to 75–1527.**

United States Court of Appeals, District of Columbia Circuit.

Argued 25 Feb. 1976.

Decided 21 June 1976.

Rehearing Denied July 30, 1976.

Roger E. Zuckerman, with whom John Hurley and William J. Garber, Washington, D. C., were on the brief, for appellants.

Judith Hetherton, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Timothy J. Reardon, III, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before BAZELON, Chief Judge, and MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

The five Appellants come before us to challenge convictions, rendered on a stipulated record, under federal and District of Columbia antigambling statutes.[1] Appellants neither dispute the factual basis on which the court rested its judgments of conviction, nor challenge the criminal statutes under which the prosecutions were brought, on their face or as applied.[2] Rather, this appeal focuses entirely upon the denial of a motion to suppress evidence obtained, directly or indirectly,[3] through a wiretap authorized on 28 September 1973. In all, three different theories in support of exclusion are raised, one by all Appellants, and the other two by three Appellants each. Because the arguments raised relate to the intricate procedural requirements of the federal[4] and local[5] wiretap statutes, we must preface our legal discussion with a fairly full presentation of the complex circumstances of this case.

## I. FACTUAL BACKGROUND

The arrests and indictments of Appellants were the culmination of a police investigation spanning a period of several months. During that time, officers of the Washington Metropolitan Police Department four times sought and received judicial approval for limited telephone surveillance under the federal and local wiretap statutes. It is admission of the fruits of the final authorized interception which Appellants object to here. However, the statutory argument for suppression requires us to consider the chain of events leading up to the final wiretap, to determine whether the procurement of approval for that interception was a proper use of the information previously obtained.

For our purposes, the procedural history of this case begins on 30 April 1973, when an officer of the police narcotics branch applied to U.S. District Judge Barrington Parker for authorization to install a pen register[6] on private telephones at two separate addresses. The four-page supporting affidavit detailed the officer's reasons for believing that the pen registers would greatly facilitate an on-going investigation into illicit narcotics trafficking.[7] The court ordered authorization of the pen registers for a period of twenty-one days, and directed the Assistant United States Attorney to provide the court with interim progress reports on the seventh and fourteenth days.[8]

---

**1.** Appellant Melvin Johnson was convicted of operating an illegal gambling business, in violation of 18 U.S.C. § 1955 (Supp. IV, 1974). Appellants Odessa Marie Madre, John S. Matthews, Clyde N. Jones, and George Byers, were convicted of operating a lottery known as the numbers game, in violation of 22 D.C.Code, § 1501 (1973). The statutes are essentially similar except that under the federal statute the business being done must average more than $2,000 per day.

**2.** Chief Judge Jones' judgment in the case is set forth in a three-page memorandum, issued 24 January 1975. *App.* at 180–82.

**3.** In addition to recordings of numerous gambling conversations, the wiretap provided in-

vestigators with information supporting warrants for the search of sixteen premises. In the execution of these warrants on 12 October 1973, three of the Appellants were arrested and various gambling records were seized.

**4.** 18 U.S.C. § 2510–20 (1970).

**5.** 23 D.C.Code §§ 541–56 (1973).

**6.** A pen register is a device which records only the numbers of telephones dialed from the phone on which it is placed.

**7.** *App.* at 1–4.

**8.** *Id.* at 5–7.

The record contains no indication of non-compliance with this instruction, designed to permit the court to monitor the investigation each week, but is silent as to the form or content of any reports that were made.

On 27 July 1973 application was again made to Judge Parker, this time for authorization of three wiretaps on telephones located at the two addresses where the previous pen registers had been approved. The application, including an eighteen page affidavit, was submitted by the same officer who had sought the pen registers, and set forth his reasons for believing that the phones were being used in the illegal acquisition and distribution of heroin and cocaine.[9] Judge Parker authorized the wiretaps for a period of twenty-one days,[10] and directed that progress reports be given on the seventh and fourteenth days. Such reports were filed with the court on 3, 9, and 21 August, and are before us on this appeal.[11]

As related to this appeal, the 27 July wiretap provided two important pieces of information. First, the thirty-seven narcotic-related calls intercepted during the first eleven days of the tap confirmed the applying officer's belief that the phones were being used to facilitate the narcotic traffic.[12] Second, the much greater number of gambling-related calls intercepted during this period, including many to telephones at 1900 16th Street, N.W., provided the police with information as to an illicit gambling ring, apparently working out of the 16th Street address.

On 18 August 1973, as a result of the information thus obtained, an officer of the gambling unit applied to Judge Parker for authorization to install pen registers on two second floor phones at the 16th Street address. The accompanying twenty-three page affidavit mentioned four persons as apparent principals, including Appellants Byers, Madre, and Johnson, and set forth in detail the officer's reasons for believing that those telephones were being utilized by an illegal numbers operation.[13] On the strength of this affidavit, Judge Parker granted the requested authorization for a twenty-one day period, requiring, as before, two interim progress reports.[14] The record is unenlightening as to the nature of any reports that were filed.

On 28 September 1973, application was made, this time to Chief Judge Harold Greene of the District of Columbia Superior Court, for the wiretap whose fruits Appellants now ask to have suppressed.[15] The targets of the tap were the two telephones at the 16th Street address which had been the object of the most recent pen register.

9. *Id.* at 8–30.

10. *Id.* at 31–34.

11. *Id.* at 188–98. These reports clearly indicate how many of calls intercepted each day on each phone, and the general subject matter with which they dealt.

12. For no reason which appears from the record, not a single narcotic related call was intercepted during the last nine days of the taps. *Id.* at 188–98.

13. *Id.* at 36–59.

14. *Id.* at 60–62.

15. Appellants strongly argue that the shift from the U.S. District Court to the D.C. Superior Court was somehow a "bad faith" maneuver by the Government to gain some advantage or evade some federal statutory obligation. We look at this shift quite differently. As will be seen by our discussion of the federal law, the Government was careful in fulfilling its obligations under the law and to Judge Parker. He had received interim and final reports on the pen register and wiretaps for the narcotics phase of the investigation and on the pen register for the gambling phase. There is no indication that an application for a gambling wiretap, on the basis of the gambling information uncovered in the pen register for gambling and in the narcotics wiretaps, both authorized by Judge Parker, would not have been approved as readily by him as by Chief Judge Greene of the D.C. Superior Court. As it was, the Government at this time decided that such prosecution as it would be able to bring would most likely be under the D.C.Code provisions relating to gambling. Hence, it was proper to ask a D.C. judge to approve the installation of the wiretap, even if that meant an additional burden of familiarizing a new judge with the details of a several months' long investigation.

The thirty-five page supporting affidavit, filed by the same gambling unit officer who filed for the pen registers, set forth in some detail the officer's reasons for believing that the two numbers at that address were being used as part of a gambling enterprise in violation of 22 D.C.Code § 1501.[16] The factual evidence relied upon included police surveillance reports, statements by unidentified informants, and detailed information[17] collected in all three of the previous intercepts. All but Appellant Matthews are mentioned by name in the affidavit, with Appellant Madre cited frequently as the focal point of the investigation. The affidavit explicitly stated the type of intercept (wiretap or pen register) involved in each previous instance, the telephones to which they were applied, and when and by whom they were approved. However, neither it nor the application itself stated that the 30 April and 27 July intercepts had been pursuant to a narcotics investigation.

Chief Judge Greene issued an order authorizing the tap for a period of fifteen days, on his finding of "probable cause to believe that Odessa Marie Madre and others suspected yet unknown" were operating a gambling business in violation of District of Columbia law.[18] The ensuing interceptions made possible recordings of the voices of all five Appellants, and provided the police with substantial new information on the existence and nature of the gambling enterprise operating out of the 16th Street address. On the basis of this information, a number of search warrants were obtained. Appellants were arrested during and after the execution of those warrants on 12 October 1973.

Prior to the 28 June indictments from which the present convictions resulted, Appellants, and several other parties arrested in the same investigation, engaged in lengthy plea negotiations during which they were all represented by a single lawyer, Meredith Coffman. The record contains uncontradicted assertions (1) that during those plea negotiations, in November or December, there took place a discovery conference attended by all but Appellants Byers and Madre, at which the wiretap evidence against each was discussed,[19] and (2) that within a week of the execution of the search warrants—and three weeks of the authorization of the final wiretap—Mr. Coffman was supplied with the affidavits offered in support of both the search warrant and the final wiretap order.[20] Each contained transcripts of a number of intercepted gambling conversations, though only Appellants Johnson, Jones, and Madre were definitely identified as taking part in any of the excerpted conversations. As noted above, the affidavit in support of the 28 September wiretap referred to all but Appellant Matthews as objects of surveillance by the police gambling unit.

Further, on 4 January 1974, by order of Chief Judge Greene, registered letters giving notice of the wiretap were sent to 26 subscribers to telephone numbers which had been called from the tapped phones, at the addresses where the phones were located. Among these subscribers were Appellants Madre, Johnson, and Jones. The letter to Jones may not have reached him, since the receipt was returned unsigned. And no such letters were sent to Appellants Matthews and Byers, because no number subscribed to by them was dialed from the

---

**16.** *Id.* at 68–102.

**17.** *Id.* at 84–96. The affidavit also made reference to information collected through a third pen register on two phones at a different Washington address, which was authorized on 3 August 1973 by Superior Court Judge Edward Daley. *Id.* at 85–86.

**18.** *Id.* at 103–106. The order required the Assistant U. S. Attorney to provide the court with

interim reports on the fifth and tenth days. The record is again unenlightening as to when and what reports were actually made.

**19.** Government Opposition to Motion to Suppress at 9, *App.* at 117.

**20.** Transcript of Suppression Motion Hearing, 9 December 1974, at 60–61.

tapped phones during the period of the intercept.[21]

Appellants' motion to suppress, which is the sole issue before us, was argued on 9 December 1974, and denied as to Appellants Madre, Johnson, and Jones at that time. It was denied as to Appellants Matthews and Byers on 16 December 1974. The case came for trial to the court on a stipulated record, on 24 January 1975, from which emerged the convictions now under challenge.

## II. GROUNDS OF APPEAL

Appellants present for our consideration three arguments in support of their motion to suppress the fruits of the 28 September 1973 wiretap. Because the fruits of that tap constitute the bulk of the incriminating evidence submitted by the Government,[22] it is clear that the reversal of the denial of the suppression motion on any ground would require reversal of the convictions of the Appellants raising the contention.

A. *Alleged violation of 23 D.C.Code § 548(b) and 18 U.S.C. § 2517(5), in*

*failing to apply for judicial permission to use the fruits of the 27 July 1973 narcotics wiretap in seeking authorization of further telephone surveillance relating to gambling.*

The "first-rank contention" advanced by all Appellants is that the use of gambling conversations recorded during the 27 July narcotics wiretap, in securing approval of the 18 August and 28 September intercepts, was in violation of federal and, in the latter instance, District of Columbia statutes requiring judicial approval prior to use of other-crimes evidence. They argue that this violation of the prior approval requirement necessitates exclusion of all fruits of both interceptions. For several reasons which we will discuss, we find no basis for such suppression in either the federal or the local District of Columbia Statute.

1. 18 U.S.C. § 2517.

■ This section of the federal wiretap statute describes the uses properly to be made, by law enforcement officers and others, of information acquired under a federally authorized intercept.[23] Clauses 1–3

---

**21.** Government Opposition to Motion to Suppress at 7, *App.* at 115.

**22.** *See* Index of Record (summarizing the Government's Evidence), *App.* at 153–79.

**23.** 18 U.S.C. § 2517 (Supp. IV, 1974) Authorization for disclosure and use of wire or oral communications.

(1) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

(2) Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire or oral communications or evidence derived therefrom may use such contents to the extent such use is appropriate to the proper performance of his official duties.

(3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercept-

ed in accordance with the provision of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation in any proceeding held under the authority of the United States or of any State or political subdivision thereof.

(4) No otherwise privileged wire or oral communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

(5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter. Such application shall be made as soon as practicable.

provide respectively that such information may be (1) disclosed, in the line of duty, to another investigative or law enforcement officer; (2) used as appropriate in the performance of one's own duties; or (3) disclosed in the form of testimony in any federal or state proceeding. Clause 5 provides that where the information in issue relate to offenses other than those specified in the order of authorization, the uses discussed under Clauses 1 and 2 are uneffected, but prior judicial application must be made before the testimonial use discussed in Clause 3.

The section 2517 use provisions are applicable to the 27 July 1973 narcotics wiretap, which was approved by a federal judge, in furtherance of an investigation of a federal offense, on authority of the federal wiretap statute. We conclude, however, that the challenged use of the fruits of 27 July wiretap violated neither the letter nor the spirit of the statute. The statute requires prior judicial approval for use of other-crimes fruits of a wiretap, only where the information is to be offered in testimony at a federal or state proceeding.[24] Prior application and approval for this type of use is desirable in order to assure that rights will not be affected by information obtained in violation of the Fourth Amendment or the wiretap statute. The writers of the statute have apparently concluded that the balance of police efficiency with the need for safeguarding personal privacy calls for exclusion of the fruits of illegal seizures from admission at trial, but does not demand routine judicial review prior to that time, at every stage of an investigation. It thus

suffices under the statute that we and the district court be able to review the 27 July tap (and all its fruits) in rendering judgment on this or any criminal matter in which they may be introduced. Had actual other-crimes evidence from that tape been introduced at the trial, the statute would have required previous application for judicial permission. However, since no recordings from the 27 July investigation were thus submitted in evidence, it suffices that the trial court review the chain of investigation for Fourth Amendment or statutory violations, at the time that allegedly tainted, indirect fruits of the tap were offered.

Lest there be any argument that the 27 July tap was itself somehow illegal as resting on mere pretense of a narcotics investigation, we hasten to point out the two ways in which the federal court exercised a post hoc check upon it. First, Judge Parker asked for and received progress reports during the course of the 27 July wiretap. These reports, broken into subject matter categories, clearly indicated that the phones tapped were being significantly used for narcotics transactions.[25] This dispels any inference that the initial affidavit was a sham or that probable cause for the 27 July tap was lacking. Second, were this not enough, Judge Parker was given a later opportunity for review, when application was made for the 18 August pen register. At that time he was presented with data from a narcotics wiretap and required to decide whether it could properly support a gambling investigation. This is precisely the issue which would have been decided on a special application under § 2517(5).

---

**24.** The proposed provision (2) envisions use of the contents of intercepted communications [without prior application], for example, to establish probable cause for arrest, to establish probable cause for a search, or to develop witnesses.

S.Rep.No.1097, 90th Cong., 2d Sess. 98 (1968), U.S.Code Cong. & Admin.News, 1968, p. 2218. This language clearly indicates that a hearing on a warrant application is not the type of proceeding to which Clause 5 extended the prior application requirement. *See United States v. Moore*, 168 U.S.App.D.C. 227, 513 F.2d 485, 501 n. 48 (1975).

*See United States v. Vento*, 533 F.2d 838, at 855 (3d Cir., 1976) where the court concluded that:

[s]ince Congress intended subsection (2) to include applications for search warrants, it would appear, equally, that an application for a wiretap authorization was intended to fall within the ambit of subsection (2) as a "use . . . appropriate to the proper performance of . . . official duties," rather than within the scope of subsection (3), which focuses on the use of wiretap evidence at trial.

**25.** *See App.* at 188–98.

■ Nor does any constitutional infirmity arise from the fact that the 27 July tap yielded much greater evidence of gambling than of narcotics activity. Officers attending a properly authorized, limited, and supervised wiretap have no obligation to close their ears to unexpected incriminating information on matters unrelated to their immediate investigation. They have a legal right to their position within electronic earshot of conversations over certain telephones within certain time limitations. Like an officer. who sees contraband in plain view from a vantage point where he has a right to be, one properly overhearing unexpected villainy need not ignore such evidence.[26]

We thus conclude that there was no violation of the federal statute's requirements pertaining to use of other-crimes information acquired in a wiretap.

**26.** We recognize, of course, that there is an obligation on the part of judges and investigators to make reasonable efforts to minimize the interception of conversations unrelated to the original purpose of the tap. This obligation is of both statutory, 23 D.C.Code § 547(g) (1973); 18 U.S.C. § 2518(5) (1970), and constitutional dimensions. *Berger v. New York,* 388 U.S. 41, 59, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). However, we reject the contention that it is any part of this obligation to shut off one's recorder in the midst of a properly authorized and conducted interception, when unexpected incriminating evidence presents itself.

In fact, § 548(b) recognizes that when incriminating statements of other crimes are overheard they may be recorded and the statute provides for using such evidence in other criminal proceedings. *See* n. 27 *infra.* Thus the statute negates any suggestion that it is improper to overhear such conversations. Cf. *United States v. Scott,* 170 U.S.App.D.C. 751, 516 F.2d 751, 756 (1975), *cert. denied,* 44 U.S. L.W. 3562 (5 April 1976); *United States v. James,* 161 U.S.App.D.C. 88, 494 F.2d 1007, 1018, *cert. denied,* 419 U.S. 1020, 95 S.Ct. 495, 42 L.Ed.2d 294 (1974).

**27.** D.C.Code § 548(b) (1973) Additional procedure for approval of interception of wire or oral communications.

(b) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized by this subchapter, intercepts wire or oral communications relating either to offenses other than those specified in the order of authorization or to offenses other than those offenses for which interception

### 2. 23 D.C.Code § 548(b).

■ The District of Columbia wiretap statute[27] establishes procedures and requirements which are, for the most part, parallel to those set out in the federal statute, and are applicable to investigations of specified D.C.Code offenses. Some of the local statute's provisions are, in fact, stricter than the corresponding sections of the federal statute, and this court has previously stated in dicta that 23 D.C.Code § 548(b) requires prior approval for any use of other-crimes evidence resulting from a wiretap.[28] However, we need not rule on this point in order to conclude that the local statute has not been offended. For the § 548(b) language on which Appellants seek to rely explicitly confines the section's applicability to other-crimes information received "while engaged in intercepting wire or oral communications in the manner authorized by

was made pursuant to subsection (a) of this section, he shall make an application to a judge as soon as practicable for approval for disclosure and use, in accordance with section 23–553, of the information intercepted. 23 D.C.Code § 553 (1973) Authorization for disclosure and use of intercepted wire or oral communications.

(a) Any investigative or law enforcement officer who, by any authorized means and in conformity with this subchapter, has obtained knowledge of the contents of any wire or oral communication, or evidence derived therefrom, may disclose or use such contents or evidence to the extent that such disclosure or use is appropriate to the proper performance of his official duties.

(b) Any person who, by any authorized means and in conformity with this subchapter, has obtained knowledge of the contents of any wire or oral communication intercepted in accordance with this subchapter, or other lawful authority, or evidence derived therefrom, may disclose the contents of such communication or evidence while giving testimony under oath or affirmation in any criminal trial, hearing, or proceeding before any grand jury or court.

(c) The contents of any wire or oral communication intercepted in conformity with this subchapter, or evidence derived therefrom, may otherwise be disclosed or used only by court order upon a showing of good cause.

**28.** *United States v. Moore,* 168 U.S.App.D.C. 227, 513 F.2d 485, 501 n. 48 (1975).

this subchapter." Thus whatever the other-crimes prior approval requirements of the D.C. statute, they apply only to wiretaps initially approved under that statute.

It appears to us entirely appropriate that this should be so. The purpose of the application requirement relating to other-crimes evidence is to assure that the initial authorization of the tap was proper and did not rest on unsubstantial assertions as a pretense for a general "seizure." As such, it is a prophylactic measure, statutorily adopted by the jurisdiction authorizing a wiretap, as one way of supervising the legitimate use of wire interception. It is not the only means of supervision available, however, as the use of interim reports by Judge Parker clearly indicates.[29] Thus, there is no reason to suppose that a less stringent prior approval requirement imposed by one jurisdiction should lead a jurisdiction with a more inclusive requirement to invoke its own statute before utilizing the fruits of the first jurisdiction's investigative efforts. It is enough that each jurisdiction should adopt appropriate procedures for supervising its own wiretaps, and that another jurisdiction utilizing the ultimate fruits of such a tap should look to the authorizing jurisdiction's statute while, of course, exercising constitutional scrutiny over the actual seizures at issue in that case.

### 3. *Failure to raise objection before trial.*

■ Quite apart from the merits of Appellant's argument relating to prior judicial approval for use of other-crimes evidence, we hold that, in any event, they have lost the opportunity to raise the objection by failing to assert it at trial. The federal and local statutes, in essentially identical language, state that a motion to suppress wiretapped communications shall be made prior to the proceeding where they are to be introduced, unless there was no opportunity to make the motion or the party was not aware of the grounds of the motion.[30] The

---

**29.** Both statutes provide for such interim reports as a means of supervision regularly available to judges authorizing wire interceptions. 18 U.S.C. § 2518(6) (1970); 23 D.C.Code § 547(h) (1973).

**30.** 18 U.S.C. § 2518(10)(a) (1970) Procedure for interception of wire or oral communications.

(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the ground that—

(i) the communication was unlawfully intercepted;

(ii) the order of authorization or approval under which it was intercepted is insufficient on its fact; or

(iii) the interception was not made in conformity with the order of authorization or approval.

Such motion shall be made before the trial, hearing, or proceeding unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion. If the motion was granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this chapter. The judge, upon the filing of such motion by the aggrieved per-

son, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determined to be in the interests of justice.

*See United States v. John,* 508 F.2d 1134, 1140 (8th Cir.), *cert. den.,* 421 U.S. 962, 95 S.Ct. 1948, 44 L.Ed.2d 448 (1975).

23 D.C.Code § 551(b) (1973) Procedure for disclosure and suppression of intercepted wire or oral communications.

(b) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States or the District of Columbia, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(1) the communication was unlawfully intercepted;

(2) the order of authorization or approval under which it was intercepted is insufficient on its face;

(3) the interception was not made in conformity with the order of authorization or approval;

(4) service was not made as provided in section 23–547; or

(5) the seal prescribed by section 23–549(a) is not present and there is no satisfactory explanation for its absence.

The motion shall be made before the trial, hearing or proceeding unless there was no

obvious reason for this is to allow final resolution of the question of admissibility before undertaking the costs in time and energy which accompany a trial. It is clearly a reasonable requirement, infringing no constitutionally protected interest, since it makes exception for those instances where a party lacks a realistic opportunity to raise an objection in a timely manner.

Appellants offer no persuasive excuse for their failure to raise this, their "first-rank contention," at the suppression hearings. There is no reason to suppose that they lacked the factual knowledge necessary to formulate this objection in December of 1974, when the suppression hearings took place. Nor have they given us any reason to conclude that they are alleging the sort of plain error or defect affecting substantial rights which will be noticed for the first time on appeal.[31] To the contrary, they are presenting what we hold to be an incorrect theory for the invocation of a prophylactic statutory suppression rule, having nothing whatever to do with the question of guilt or innocence. We see no reason not to apply the statute's procedural requirement barring late assertion of grounds for suppression in such a case.

> opportunity to make the motion or the person was not aware of the grounds of the motion. If the motion is granted, the contents of the intercepted wire or oral communication, or evidence derived therefrom, shall be treated as having been obtained in violation of this subchapter and shall not be received in evidence in the trial, hearing, or proceeding. The judge, upon the filing of the motion by the aggrieved person, may in his discretion make available to the aggrieved person or his counsel for inspection such portions of the intercepted communication or evidence derived therefrom as the judge determines to be in the interests of justice.

**31.** *See* Fed.R.Crim.P. 52(b) (1973); *United States v. Smith,* 160 U.S.App.D.C. 221, 490 F.2d 789, 794 (1974).

**32.** Matthews does not contend that he should have been so identified. Madre is identified throughout both documents as the prime target of the investigation.

**B.** *Alleged violation of 23 D.C.Code §§ 547(a)(2)(D) and (e)(1), in omitting from the application and court order approving the 28 September 1973 wiretap the identification of Byers, Johnson, and Jones, as targets of the wiretap.*

Appellants Byers, Jones, and Johnson argue that the fruits of the 28 September wiretap must be suppressed as to them for the additional reason that they were not identified as targets in either the tap application or the order, as required under 23 D.C.Code § 547(a)(2)(D) and (e)(1).[32] Those sections, patterned on provisions in the federal statute,[33] require that the application and order include the identity of the person, if known, committing the offense and whose communications are to be intercepted.[34] The essentially identical federal requirement has been construed to require the identification of persons not merely upon a likelihood that they will be intercepted, but only when there is also probable cause to believe that they are committing the offense for which the wiretap is sought.[35] We take that two-pronged test to be applicable in this case.

**33.** 18 U.S.C. § 2518(1)(b)(iv) and (4)(a) (1970).

**34.** It is true that only the § 547(a)(2)(D) requirement pertaining to the application explicitly limits the requirement to persons "committing the offense" who are likely to be intercepted, and that the § 547(e)(1) requirement relating to the court's order seems on its face to require identification of all known persons likely to be intercepted. However, the Supreme Court has stated that since the judge issuing the order must rely primarily on Government counsel's application in formulating his own order, he can not have been intended to bear a broader burden of identification. Thus only persons "committing the offense" and likely to be intercepted need be identified in either the application or the order. *United States v. Kahn,* 415 U.S. 143, 152, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974).

**35.** *Id.* at 155, 94 S.Ct. 977; *United States v. Bernstein,* 509 F.2d 996, 1002 (4th Cir. 1975).

As to the application, we see no need to decide whether the police were required to identify any of the three complaining Appellants, because we conclude that they have been fully identified within any sensible meaning of that word. While the police referred only to Appellant Madre and "others suspected yet unknown" in their formal five-page application, the attached thirty-five page affidavit, which is incorporated by reference, appears to recite all information which the police had garnered from their investigation, and contains the names of all the complaining Appellants.[36] This is clearly adequate identification to serve the statutory goal of forcing the police to identify the purpose and objects of their investigation with as much particularity as possible.

As to the order authorizing the tap, we conclude that Chief Judge Greene did not abuse his discretion in identifying only Appellant Madre and "others suspected yet unknown." In the case of each Appellant his problem was a factual one—of determining the likelihood that (a) each one was involved in the gambling operation and (b) that his conversations would be intercepted. Our assessment of the facts as they appeared at the time of the 28 September application leads us to conclude that in each Appellant's case it was reasonable for Judge Greene to answer one or both of these questions in the negative.

As to Appellant Jones, the affidavit makes clear that police information at this time was extremely sketchy, and related to addresses, phone numbers, and police records corresponding to his name, but unconnected by corroborating observation to a single identifiable person. The 16th Street apartment where the tapped phones were located was rented to a fictitious person employed by an equally fictitious Clyde N. Jones Tailor Shop. District of Columbia police records indicated a Clyde N. Jones who had been convicted many years ago of gambling-related offenses. And the 18 August gambling pen register indicated that a telephone registered to Clyde N. Jones was called regularly and repeatedly from one of the tapped phones. What is notably absent is any observation of an actual person identifiable as Clyde N. Jones, or any other reason to believe that such a person existed and played a part in the gambling scheme. There being no such reasonable basis for concluding that Clyde N. Jones was more than a convenient alias, there was, *a fortiori* no reason to believe that his conversations would be intercepted.

In the cases of Appellants Byers and Johnson, intensive surveillance had revealed actual people with patterns of conduct intermeshing to some degree with Appellant Madre and the activities at the 16th Street address. In all candor, we must note that the affidavit contains a good deal of circumstantial data tying Byers and Johnson to Madre and/or the 16th Street address, and that the officer filing the affidavit found it sufficient to support the listing of both as "apparent principals" in the gambling business.[37] Nonetheless, we uphold as reasonable the implicit conclusion reflected in the order, that probable cause was lacking to identify either as a target of the wiretap.

The sum of the information which the police had with respect to Byers indicated that he was the "bag-man" for the operation, delivering money and bets between the 16th Street "office" and the "books" distributed across the city. This role was indicated by specific informant testimony of a particular large pickup from a barbershop,[38] and was corroborated by repeated police observation of frequent short visits to the 16th Street address. In this capacity, Byers would have no occasion to utilize the telephones on which taps had been placed, and there was no reason to believe that he would call or be called to or from those

---

36. The affidavit refers to these Appellants by name and provides specific information concerning their activities, on the following pages:
   Byers—6, 9, 11, 14, 15, 17, 29A, 29B;
   Johnson—6, 9, 10, 13, 15, 17, 20, 21, 23;
   Jones—7, 27

37. *App.* at 76.

38. *App.* at 73.

phones while at another address. In short, while there may well have been probable cause to believe that Byers was deeply involved in the operation, there was little or no reason to expect that his conversations would be overheard.

■ In the case of Johnson, the information in the affidavit was less conclusive in linking him with the numbers operation and the use of the telephones in furtherance of it. Most of the accumulated information pertaining to him related to his apparent longtime association with Appellant Madre. There had been one call intercepted during the 27 July wiretap, during which Madre indicated that Johnson regularly went to the 16th Street "office" with her.[39] But Johnson had been seen with her in the vicinity of the office on only two occasions, and had not been seen at all near the office since 16 August. Even where, as here, the subsequent wiretap revealed that Johnson, not Madre, was in charge of the entire operation, we cannot fault Chief Judge Greene for concluding, on the existing record of known association and limited observation, that there was no probable cause to believe that Johnson was involved and would be intercepted.[40]

We therefore conclude that the application and order pertaining to the 28 September 1973 wiretap present no violation of 23 D.C.Code § 547 by failure to identify Appellants Byers, Johnson or Jones.

*C. Alleged violation of 23 D.C. Code § 550 and 18 U.S.C. § 2518(8)(d), by failure to provide inventory notice to appellants Jones, Byers, and Matthews within ninety days of the termination of the 28 September 1973 wiretap.*

Appellants Jones, Byers, and Matthews contend that the fruits of the 28 September wiretap must be suppressed as to them, because they were not served with formal inventory notice that their calls had been intercepted, as required by 23 D.C. Code § 550 and 18 U.S.C. § 2518(8)(d). We can dispense immediately with the federal statutory argument, since the controverted wiretap was authorized pursuant to the D.C. wiretap statute by a local judge in investigation of a D.C. Code offense—the federal statute is simply inapplicable. However, the local statute's inventory requirement is essentially identical, and clearly is applicable to the case before us.

That statute requires, *inter alia*, that a judge passing on a wiretap application give notice within a reasonable time, but not later than 90 days after termination of the tap, to persons named in the order and to

---

**39.** *App.* at 87–88.

**40.** The mere fact of association with a person engaged in illegal activities is, of course, insufficient to support a finding of probable cause, for present or any other purposes. *See United States v. Martinez,* 498 F.2d 464, 468 (6th Cir.), *cert. den.,* 419 U.S. 1056, 95 S.Ct. 639, 42 L.Ed.2d 654 (1974). It seems to us a close question whether, with the additional information accumulated by the police, probable cause should be found to exist and, however we would resolve the question in the first instance, we are unable to say that Chief Judge Greene abused his discretion in finding in the negative. Johnson's case is distinguishable from *United States v. Moore,* 168 U.S.App.D.C. 227, 513 F.2d 485, 495 (1975), where the incriminating evidence in the hands of the police was greater in quantity and specificity than here.

It is also immaterial that a more intense investigation might possibly have given rise to probable cause to believe that Johnson was involved in the numbers operation and would be intercepted. *See Moore, supra,* at 498–99. "A requirement that the Government fully investigate the possibility that any likely user of a telephone was engaging in criminal activities before applying for an interception order would greatly subvert the effectiveness of the law enforcement mechanism that Congress constructed." *United States v. Kahn,* 415 U.S. 143, 153, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974). So, more clearly would a requirement of investigation of anyone generally associating with a suspect. Under both the federal and local schemes, an order would be defective for failure to make further conventional investigations only where such investigations might obviate the wiretap itself. *See* 18 U.S.C. § 2518(1)(c) and (3)(c) (1970); 23 D.C.Code § 547(a)(3) and (c)(3) (1973). In a numbers case such as this one, where the telephone is the critical instrumentality of the illegal enterprise, no reasonable argument can be made that further efforts would have made the wiretap unnecessary.

such other persons as he may in his discretion find necessary in the interest of justice.[41] In attempted compliance with that requirement, Chief Judge Greene in December of 1973 ordered that formal notice of interception be sent to twenty-six individuals listed as subscribers to telephones called from the 16th street address. These letters were sent on 4 January 1974, six days before the expiration of ninety days from the end of the tap. They were received by Appellants Madre and Johnson, who do not raise the inventory argument on appeal. Appellant Jones was sent such notice at the U Street address where a telephone was registered in his name, but the registered receipt was returned unsigned. Appellants Byers and Matthews were not sent such notice, since no telephone registered to either of them was called during the period of the tap.

With regard to Jones, we do not hesitate to conclude that the statute has been fully and formally complied with. On information provided by Government counsel, the court ordered that he be sent formal notice by registered mail, at the address which police had reason to believe was his residence. We hold that the statute requires no more than such a reasonable effort to reach persons whose conversations have been intercepted, and on that basis reject the argument as advanced by Jones.

As to Byers and Matthews, the issue is a bit more complicated. Although Government investigators apparently had reason to believe that their conversations had been intercepted,[42] their names were not submitted to Judge Greene prior to his order of inventory notice. Since we have above affirmed the exclusion of their names from the wiretap order, they would fall into the category of persons to be notified where justice so requires, within the discretion of the court. It is thus not clear whether Chief Judge Greene could be faulted for failing to notify them, if he had information as to the fact and nature of their interception before him. However, where, as here, a judge has been denied the opportunity to exercise the discretion accorded him under the statute by the Government's omission "by oversight"[43] to inform him of known intercepted parties, a different and stronger argument for suppression is available.[44]

We are spared, by the facts of this case, the task of deciding whether the inventory requirement might be violated in such a situation. For the record in this case

---

**41.** 23 D.C. Code § 550 (1973) Inventory.

(a) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 23–548 which is denied, or the termination of the period of any order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine, in his discretion, are necessary in the interest of justice, an inventory which shall include notice of—

(1) the fact of the entry of the order or the application for an order of approval which was denied;

(2) the date of the entry of the order or the denial of the application for an order of approval;

(3) the period of authorized, approved, or disapproved interception; and

(4) whether during the period wire or oral communications were intercepted.

The judge, upon the filing of a motion, may in his discretion make available to the person or his counsel for inspection such portions of the intercepted communications, applications, and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge, the serving of the inventory required by this subsection may be postponed.

Our discussion herein concerning § 550 is equally applicable to 23 D.C. Code § 551(a), which requires that wiretap evidence shall not be admitted where the inventory was served less than ten days before the proceeding, unless the ten day period is waived by court order.

**42.** Transcript of Suppression Motion Hearing, 9 December 1974, at 67, 74.

**43.** *Id.* at 67.

**44.** *See United States v. Chun*, 503 F.2d 533, 540 (9th Cir. 1974), where the court held that the Government's failure to provide the judge with even a general description of the defendants so that he could properly exercise his discretion to notify them of the interceptions "contravenes both the spirit and the letter of § 2518(8)(d)" of the federal Statute.

makes clear that all Appellants had actual notice that their words had been intercepted in the 28 September wiretap. And as we read the precedents advanced by both sides, actual notice is a bar to any suppression argument based on non-compliance with the inventory requirement, at least where the failure to give formal notice was not a deliberate act of either the court or the Government.

It has been freely conceded throughout this proceeding that Mr. Coffman, then attorney for all Appellants, was provided in mid-October 1973, with copies of the affidavits supporting both the 28 September wiretap and the subsequent search warrants, as well as the court orders themselves.[45] It has been further conceded that these materials reflected "what was done as far as the wire intercept was concerned,"[46] and that during the pre-indictment period "everybody knew there was a wiretap."[47] In fact, the wiretap application contained the names of all but Appellant Matthews, as objects of the gambling investigation. The Government alleges further, and appellants do not contest, that a discovery meeting at which specific wiretap evidence was disclosed, took place well within the ninety day period.[48] It was attended by all but Appellants Madre and Byers.

Moreover, Appellants concede, even as they come before this court, that actual notice of interception was not lacking as to any of them.[49] Nowhere in their written and oral arguments do we find a claim that

a lack of formal inventory notice denied any Appellant the opportunity to bring an early challenge to the wiretap procedure applied here. To the contrary, this third theory of appeal rests on a highly formalistic construction of the statute, which would exclude evidence for the most technical forms of non-compliance, however unintentional and however insignificant the effect on the rights of the persons involved. Because we see no purpose in suppressing the fruits of good faith investigative efforts for failure to give formal notice, where it is clear that actual notice has otherwise been timely received, we reject this argument as unpersuasive.[50] We find the precedents dealing with the inventory requirement, under the parallel federal statute, to be fully supportive of this position.

We rely primarily on *United States v. Wolk*[51] and *United States v. Bohn*,[52] which stand for the proposition that failure to comply with the inventory requirement is not grounds for suppression if the ends of that requirement have otherwise been achieved. Since all Appellants had actual notice well within the ninety day period, and thus had an opportunity to challenge the wiretap while the circumstances surrounding it were still fresh, we see little function that would be served by requiring further formal notice.[53] There being no assertion here of bad faith on the part of the Government, we need not determine whether this principle would hold in the case of deliberate non-compliance.

---

**45.** Transcript of Suppression Motion Hearing, 9 December 1974, at 60–61.

**46.** *Id.* at 24.

**47.** *Id.* at 27.

**48.** *App.* at 17.

**49.** *Appellant's Reply Br.* at 25.

**50.** We express no opinion whether non-compliance with the inventory provision would be condoned where the court would have to speculate as to whether the defendants were otherwise timely notified.

**51.** 466 F.2d 1143, 1145–46 (8th Cir. 1972).

**52.** 508 F.2d 1145, 1148 (8th Cir.), *cert. denied*, 421 U.S. 947, 95 S.Ct. 1676, 44 L.Ed.2d 100 (1975).

**53.** Appellants argue that the mechanistic suppression of evidence for violation of any formal requirement would impose a discipline on investigative officers which would, in the long run, serve the goal of protecting individual privacy interests. While this observation may be correct as far as it goes, such a draconian insistence on formal compliance would have an obvious cost in investigative efficiency and the freeing of guilty persons. On balance, we see nothing to recommend such an interpretation, either in the statute or in the cases which have construed it.

The cases advanced by Appellants as limiting or contradicting the holdings of *Wolk* and *Bohn*, do not support a contrary resolution of the case before us. Perhaps most importantly, we do not believe that *United States v. Giordano*[54] requires suppression for technical non-compliance of the sort involved here, where it is demonstrable that there was no effect on the rights or interests of the defendants involved.

In that case, the Government had failed to comply with the federal statute's requirement that the Attorney General himself approve all wiretap applications. In concluding that some non-constitutional violations of the statute could be grounds for suppression, the Supreme Court set forth a rationale for distinguishing between suppressable and non-suppressable statutory violations.[55]

> [W]e think Congress intended to require suppression where there is failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.

Finding the requirement of Attorney General approval to have been designated a central role in screening out inappropriate cases, the Court ordered suppression in a case where no such approval had been given.

The logic of *Giordano* is inapplicable to the case before us precisely because there was no failure here to "substantially implement the Congressional intention to limit the use" of wiretaps. The Attorney General approval requirement serves the unduplicable function of forcing the Government's No. 1 lawyer to commit himself as to the propriety of every tap applied for, and thus

renders less likely applications which, for whatever reason, should never have been filed. But the inventory notice requirement is only one of several ways to the desired end of assuring intercepted parties a real opportunity to challenge a wiretap before all information concerning it is stale.

Cases from other circuits which have reversed convictions for non-compliance with the inventory requirement do not conflict with the position we take today. In *United States v. Chun*,[56] the court reversed and remanded, in part for determination "whether the underlying statutory purpose behind the . . . formal notice provisions has been satisfied in spite of appellees' failure to receive such formal notice." On remand, the district court ordered the evidence suppressed on grounds suggesting that a different result would have obtained had actual notice been received within ninety days.[57] In *United States v. Eastman*[58] the affirmance of a suppression order turned on the deliberate character of the Government's non-compliance with the inventory provisions. No such deliberate non-compliance is alleged here. Finally, in *United States v. Donovan*,[59] a suppression motion was affirmed, based partly on the district court's explicit holding that the defendants had not been "otherwise notified that they had been intercepted."

We therefore reject the contention of Appellants Jones, Byers, and Matthews, that the fruits of the 28 September 1973 wiretap must be suppressed as to them, for failure to comply with the inventory requirement of 23 D.C. Code § 550.

## III. CONCLUSION

For the aforementioned reasons, the convictions of all Appellants are

*Affirmed.*

**54.** 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974).

**55.** *Id.* at 527, 94 S.Ct. at 1832.

**56.** 503 F.2d 533, 543 (9th Cir. 1974).

**57.** *United States v. Chun*, 386 F.Supp. 91, 95 (D.Haw.1974).

**58.** 465 F.2d 1057, 1062 (3d Cir. 1972).

**59.** 513 F.2d 337, 343 (6th Cir. 1975).