**UNITED STATES of America, Plaintiff,**

v.

**James T. LICAVOLI et al., Defendants.**

**No. CR78–2.**

United States District Court,
N. D. Ohio, E. D.

Sept. 6, 1978.

As Amended Sept. 15, 1978.

James R. Williams, U. S. Atty., Cleveland, Ohio, Douglas P. Roller, Washington, D. C., Steven R. Olah, Michael M. Michelson, Kenneth A. Bravo, Dept. of Justice Organized Crime Strike Force, Cleveland, Ohio, for the Government.

Fred K. Jurek, James R. Willis, Stephen O. Walker, Cleveland, Ohio, for defendant James T. Licavoli.

John P. Calandra, Jr., Fisher & Calandra Co., L.P.A., Burt Fulton, Gallagher, Sharp, Fulton, Norman & Mollison, Cleveland, Ohio, for defendant John P. Calandra.

Leonard W. Yelsky, David A. Snow, Yelsky, Eisen & Singer Co., L.P.A., Cleveland, Ohio, for defendant Angelo Lonardo.

Richard A. Damiani, Dubyak & DeMarco, Cleveland, Ohio, Carmen Policy, Manos, Flask & Policy, Youngstown, Ohio, for defendant Ronald Carabbia.

Ralph D. Sperli, Dempsey, Giuliani, Sperli, McMahon & Longo, Cleveland, Ohio, for defendant Pasquale J. Cisternino.

Elmer A. Giuliani, Thomas G. Longo, Dempsey, Giuliani, Sperli, McMahon & Longo, Cleveland, Ohio, for defendant Thomas James Sinito.

Jerome P. Milano, Robert L. Miller, White, Milano & Miller, Cleveland, Ohio, for defendant Alfred S. Calabrese.

Dennis D. McDonald, McDonald, Duggan & Foppoli, Hayward, Cal., for defendant Aladena T. Fratianno.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This proceeding was instituted upon a one-count Indictment filed with the Court on January 6, 1978 charging defendants with conspiring to violate Title 18, U.S.C. § 1962(c). The case is presently before the Court on defendant Ronald Carabbia's Motion to suppress evidence obtained as a result of electronic surveillance in Cleveland, Ohio, and San Francisco, California. In the alternative, defendant seeks dismissal of the Indictment.

In issue are four Court authorized electronic surveillances. On August 10, 1977, the Court for the Northern District of California authorized a thirty day electronic surveillance of telephone number (415) 441–9580, listed to Sal's Esspresso Caffe, located at 240 Taylor Street, San Francisco, California. A similar authorization was issued by the same Court on September 15, 1977. On August 26, 1977, the Court for the Northern District of Ohio authorized the interception of oral communications at the residence of 12301 Fairview Court, Cleveland, Ohio for a thirty day period. The authorization was extended by this Court on October 3, 1977 for an additional thirty days. Defendant Carabbia asserts noncompliance by the Government with the procedural and substantive requirements of 18 U.S.C. §§ 2517(5) and 2518(5) in implementing these Court authorized electronic surveillances.

■ Initially, defendant Carabbia's standing to challenge the validity of the electronic surveillance authorized by the Court for the Northern District of Ohio, Eastern Division on August 26 and October 3, 1977 present a threshold issue of law to be determined by the Court. *United States v. Tortorello*, 533 F.2d 809 (2d Cir.), *cert. denied*, 429 U.S. 894, 97 S.Ct. 254, 50 L.Ed.2d 177 (1976). As the Supreme Court reiterated in *Alderman v. United States*, 394 U.S. 165, 173, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 *rehearing denied*, 394 U.S. 939, 89 S.Ct. 1177, 22 L.Ed.2d 475 (1969), the party seeking suppression has the initial burden of establishing his standing to challenge a search and seizure:

The rule is stated in *Jones v. United States*, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960):

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *

Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy."

This same principle was twice acknowledged last Term. *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). [footnotes omitted]

*See also United States v. Galante*, 547 F.2d 733 (2d Cir. 1976), *cert. denied*, 431 U.S. 969, 97 S.Ct. 2930, 53 L.Ed.2d 1066 (1977).

In *United States v. Delguyd*, 542 F.2d 346, 349 (6th Cir.), *rehearing denied* (1976), the Court of Appeals for the Sixth Circuit reaffirmed its adherence to the standard announced by the Supreme Court in *Brown v. United States*, 411 U.S. 223, 229, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973),

> that a defendant has no standing to contest a search and seizure where he is not on the premises at the time of the search and alleges no proprietary or possessory interest in the premises and is not charged with an offense that includes as an essential element, possession of the seized evidence at the time of the search. As explained in *Alderman v. United States*, 394 U.S. 165, 171–76, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), Fourth Amendment rights are personal in nature and cannot be vicariously asserted by one whose privacy was not invaded by the search. [footnote omitted]

*Accord, United States v. Hunter*, 550 F.2d 1066 (6th Cir. 1977); *United States v. Hodge*, 539 F.2d 898 (6th Cir. 1976), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977); *United States v. Dye*, 508 F.2d 1226 (6th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975); *United States v. Hearn*, 496 F.2d 236 (6th Cir.), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 622, 42 L.Ed.2d 642 (1974).

■ Moreover, a defendant may not challenge the seizure of evidence absent a preliminary showing that he possessed a proprietary interest in the property seized. *United States v. Galante, supra; United States v. Lisk*, 522 F.2d 228 (7th Cir.), *cert. denied*, 423 U.S. 1078, 96 S.Ct. 865, 47 L.Ed.2d 89 (1976); *see Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); *United States v. Delguyd, supra.*

■ Defendant Carabbia having failed to assert a proprietary interest in the premises located at 12301 Fairview Court, Cleveland, Ohio where the electronic surveillance was installed, lacks the necessary standing to challenge the electronically seized evidence resulting from the Court authorized surveillance of August 26, and/or October 3, 1977.

Defendant Carabbia's challenge that conclusory characterizations incorporated into the applications and affidavits for all four Court authorized electronic surveillances here in issue were unsupported by particularized allegations is without merit.

■ Section 2518(1)(c) does not reserve electronic surveillance for use as a last investigative resort. *United States v. Landmesser*, 553 F.2d 17 (6th Cir. 1977); *United States v. Falcone*, 364 F.Supp. 877, 889 (D.N.J.1973), *aff'd*, 505 F.2d 478 (3d Cir. 1974); *United States v. Kerrigan*, 514 F.2d 35 (9th Cir.), *cert. denied sub nom., Karrigan v. United States*, 423 U.S. 924, 96 S.Ct. 266, 46 L.Ed.2d 249 (1975); *United States v. Robertson*, 504 F.2d 289, 293 (5th Cir. 1974). The statute is satisfied if the Government demonstrates that other procedures *appear* reasonably unlikely to succeed, or that such procedures are overly dangerous to pursue. *United States v. Askins*, 351 F.Supp. 408, 414 (D.Md.1972).

In *United States v. Steinberg*, 525 F.2d 1126 (2nd Cir. 1975), the Court noted that subsection 2518(1)(c) is drafted in the alternative and where as here a conspiracy was involved, the Court held that there was compliance with the statute where the affidavit contained sufficient information to permit the trial Court to conclude that other investigative means would be "unlikely to succeed" in establishing the full scope of the illegal activity under investigation.

■ In the instant case, the Government asserts that it had, in fact, exhausted routine investigative procedures before resorting to electronic surveillance as attested to in the factually detailed August 10, 1977 affidavit of Special Agent Williams and the September 15, 1977 affidavit of Special Agent Dirkse wherein the protracted investigation is detailed. The agents attest to the physical surveillance of the suspects and

the tactics and security procedures successfully employed by Fratianno and his associates to avoid physical surveillance, and the manner in which the physical surveillance of Sal's Esspresso Caffe was thwarted when it was discovered by the suspects. The agents further particularized unsuccessful attempts to infiltrate into Fratianno's tight-knit group of associates and the refusal of informants to testify. *United States v. Giordano*, 416 U.S. 505, 515, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974); *United States v. Landmesser, supra.* Certainly these particularized attestations constitute sufficient "statements of fact from which the Judge could make a determination that '(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous . . .'". *United States v. O'Neill*, 497 F.2d 1020, 1025 (6th Cir. 1974).

Accordingly, the Government's applications and affidavits in support of the Court authorized electronic surveillance here in issue complied with 18 U.S.C. § 2518(1)(c).

Next, the defendant contends that the provisions of 18 U.S.C., § 2517(5) were violated since the Order authorizing the disclosure of communications—concerning evidence of violations "unrelated" to those enumerated in the California court Orders authorizing the interception of wire and oral communications—was issued on December 15, 1977, ten days after the information was used before United States Magistrate Herbert T. Maher. The thrust of Carabbia's motion charges that references were made to the Court authorized San Francisco, California wire interception and that a transcription of a telephone conversation between Fratianno and the defendant was included in the affidavit supporting probable cause for the issuance, on December 5, 1977, of the warrant ordering the arrest of Carabbia on the instant charges (18 U.S.C. § 1962(d)). Since the wiretap Order in California was concerned with suspected violations of federal law other than the RICO provisions (18 U.S.C. § 1961 *et seq.*), the defendant Carabbia argues that an Order under § 2517(5) should have been obtained prior to incorporating the transcripts of the California phone conversations into the affidavit presented to Magistrate Maher for his arrest. Title 18, U.S.C. § 2517 provides in pertinent part:

> (3) Any person who has received, by any means authorized by this chapter, any information concerning a wire or oral communication, or evidence derived therefrom intercepted in accordance with the provisions of this chapter may disclose the contents of that communication or such derivative evidence while giving testimony under oath or affirmation *in any proceeding* held under the authority of the United States or of any State or political subdivision thereof. (emphasis added)

> \*　　\*　　\*　　\*　　\*　　\*

> (5) When an investigative or law enforcement officer, while engaged in intercepting wire or oral communications in the manner authorized herein, intercepts wire or oral communications relating to offenses other than those specified in the order of authorization or approval, the contents thereof, and evidence derived therefrom, may be disclosed or used as provided in subsections (1) and (2) of this section. Such contents and any evidence derived therefrom may be used under subsection (3) of this section when authorized or approved by a judge of competent jurisdiction where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter.

More specifically, the chronology of events relied upon by Carabbia to support his challenge that information obtained from the August 10, 1977 California court ordered wire surveillance was disclosed without timely judicial authority to support the warrant of arrest issued against him is as follows:

On August 10, 1977, the California court authorized the FBI to monitor calls to telephone number (415) 441–9580 in San Francisco, California upon probable cause having been shown that Aladena Fratianno and/or

Phillip Maita had violated 18 U.S.C. §§ 2315 and 371. On August 23, 1977, federal agents intercepted a telephone call made from the said number by Fratianno and Frank Velotta to area code (216) 755–9585, an unlisted telephone number in Struthers, Ohio, later determined to be listed in the name of Ronald Carabbia. A physical surveillance was initiated at Cleveland Hopkins Airport as a result of the aforementioned telephone call and on August 24, 1977, Fratianno arrived at Cleveland Hopkins Airport from San Francisco. On September 21, 1977, during the effective period of another duly authorized interception order from the California court dated September 15, 1977, the FBI intercepted a second telephone call from (415) 441–9580 to the unlisted Carabbia telephone number in Struthers, Ohio. The intercepted conversations were brief, guarded and ambiguous. The telephone calls from San Francisco to Struthers, Ohio, could not, under the then existing circumstances, be ruled out by the monitoring agents as not pertinent to the California Fratianno/Maita investigation and their significance did not surface until November 14, 1977, when a Special Investigator of the Cleveland, Ohio office of the Organized Crime Strike Force, upon collating the above records of the San Francisco/Struthers interceptions pursuant to 18 U.S.C. § 2517(1) related them to the pending Cleveland investigation concerning suspected violations of 18 U.S.C. § 1961 et seq.

On December 7 and 15, 1977, application was made to the California Court to permit the use of the information collected during the San Francisco/Fratianno/Carabbia wire interception to pursue the federal investigation in the Northern District of Ohio of violations of 18 U.S.C. § 1961 et seq. In its Orders of December 7 and 15, 1977, the California Court authorized the use of the aforesaid information for the purposes requested. However, the transcript of the August 23, 1977 San Francisco/Fratianno/Carabbia telephone call to Struthers, Ohio had been incorporated into an affidavit and presented to the U.S. Magistrate for the Northern District of Ohio on December 5, 1977 to support an application for a war-

rant to arrest defendant Carabbia which issued on that date. On January 3, 1978, the information from the August 23, 1977 San Francisco/Fratianno/Carabbia electronic surveillance, along with other evidence was presented to the grand jury in the Northern District of Ohio which returned an indictment in this case against the named defendants herein including Carabbia. Use of the "unrelated" information before the Ohio Grand Jury is not in issue. Defendant Carabbia argues that the use of the "unrelated" San Francisco/Fratianno/Carabbia wire interceptions was improper because the Government did not obtain a timely disclosure order from the California Court pursuant to Section 2517(5).

On this basis defendant Carabbia urges the invalidity of his arrest warrant, relying upon *United States v. Brodson*, 528 F.2d 214 (7th Cir. 1975), *rehearing and rehearing en banc denied* (1976), and *United States v. Marion*, 535 F.2d 697 (2d Cir. 1976) wherein wire intercepted information was improperly disclosed without timely judicial authorization to a grand jury to obtain an indictment and to a petit jury during trial on the merits, respectively.

Section 2517(5) distinguishes between two types of use that may be made of intercepted communications disclosing offenses other than those specified in the original order of authorization. "Unrelated" communications may be disclosed or used without judicial authorization if such use is in conformity with subsections (1) and (2) of section 2517. Subsections (1) and (2) permit the disclosure of "unrelated" communications to other investigative officers and the use of the communications by the recipient officer "to the extent such use is appropriate to the proper performance of his official duties." On the other hand, subsections (3) and (5) require judicial approval for the disclosure of "unrelated" communications in connection with "giving testimony under oath or affirmation in any proceeding held under the authority of the United States . ."

The use of the San Francisco/Fratianno/Carabbia "unrelated" wire interception

to obtain the Carabbia arrest warrant compels the Court to determine if the procedure implemented in obtaining the said arrest warrant consisted of a "proceeding held under the authority of the United States" under § 2517(3) and (5). The Court concludes that it does not. The legislative history of § 2517 reflects that subsection (3) "envisions . . . the use and disclosure of such evidence at trial to establish guilt directly, or to corroborate or to impeach a witness' testimony or to refresh his recollection." (citations omitted). Subsection (2), in contrast, "envisions use of the contents of intercepted communications, for example, . . . to establish probable cause to search or to develop witnesses." Thus, Congress appears to have contemplated the employment, without judicial authorization of "unrelated" communications to obtain search warrants. 1968 U.S.Code Cong. & Admin. News, pp. 2188–89.

Since Congress intended subsection (2) to include applications for search warrants, it would logically follow that an application for an arrest warrant was equally intended to fall within the ambit of subsection (2) as a "use . . . appropriate to the proper performance of . . . official dut[y]", rather than within the scope of subsection (3), which focuses on the use of an intercepted communication as evidence at a trial or for grand jury purposes. *United States v. Johnson*, 176 U.S.App.D.C. 179, 539 F.2d 181, *rehearing denied* (1976); *United States v. Vento*, 533 F.2d 838, 855 (3d Cir. 1976).

■ The Court concludes that the application for an arrest warrant, like an application for a search warrant, is a nonadversary, *ex parte* determination of probable cause and prior Court authorization to use "unrelated" evidence obtained during the course of an authorized electronic surveillance of other crimes is unnecessary. Nor does the record demonstrate any impropriety in the use of the information obtained from the San Francisco/Fratianno/Carabbia wire interception before the Grand Jury sitting in the Northern District of Ohio.

■ Finally, the Court concludes that Carabbia's charge that the San Francisco

electronic surveillances were executed in violation of the minimization requirements of 18 U.S.C. § 2518(5) is equally without substance. Title III of the Omnibus Crime Control and Safe Streets Act of 1968 mandates that electronic surveillance "be conducted in such a way as to minimize" the interception of communications not subject to the interception. Carabbia asserts that the San Francisco/Fratianno/Carabbia recorded conversations of August 23 and September 21, 1977 were "unrelated" to the stolen securities, obstruction of justice and gambling charges under investigation by the California authorities and further that no record of the said calls to Struthers, Ohio were incorporated into the surveillance logs required to be filed with the Court at five day intervals during the course of the authorized surveillance. Therefore, the conversations should be suppressed. Interpreting the minimization requirements of 18 U.S.C. § 2518(5) the Supreme Court of the United States in *Scott v. United States*, 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), concluded:

> Many of the nonpertinent calls may have been very short. Others may have been one-time only calls. Still other calls may have been ambiguous in nature or involve guarded or coded language. In all of these circumstances agents can hardly be expected to know that the calls are not pertinent prior to their termination. *Scott, supra* at 1725.

Applying these standards this Court finds that the calls here in issue were to an infrequently used number. The conversations were brief, guarded and ambiguous. The agents conducting the surveillance could not be expected to know under the existing facts and circumstances that the calls were not pertinent to the investigation then in progress in California. In considering the Struthers calls within the context of minimization standards, the California Court had found probable cause in both instances to believe the conversation of "others as yet unknown" who were linked to the conspiracy under investigation in California would be intercepted during the

calls of the electronic surveillance then in progress (See Government Exhibits E & F). Accordingly, considering and evaluating both the scope of the criminal enterprise under investigation in California and the Government expectation in pursuing that investigation, this Court concludes that the Government's interception of the two San Francisco/Fratianno/Carabbia calls to Struthers, Ohio was in accord with the minimization requirements of Section 2518(5).

For the reasons aforesaid, the defendant Carabbia's MOTION to suppress is hereby denied.

IT IS SO ORDERED.